Oliver Wayne ALLEN, Sr., Plaintiff in Error,

v.

Billy Regina HICKMAN, Joe Hickman, Jr., and Mrs. Joe Hickman, Jr., Defendants in Error.

No. 39859.

Supreme Court of Oklahoma.

July 2, 1963.

Durward K. McDaniel, W. D. Crabtree, Oklahoma City, for plaintiff in error.

Pierce, Mock, Duncan, Couch & Hendrickson, by James S. Steph, Oklahoma City, for defendants in error.

JACKSON, Justice.

In the trial court, plaintiff Allen sued the defendants for damages for injuries resulting from an automobile accident between vehicles driven by plaintiff and defendant Billy Regina Hickman, the minor daughter of defendants Joe Hickman, Jr., and Mrs. Joe Hickman, Jr. The minority of Billy Regina Hickman was pleaded in plaintiff's petition.

The record shows that no guardian ad litem was appointed for Billy Regina Hickman, and that no request for such an appointment was ever made, although this point was noted at pre-trial conference on March 29, 1960. Trial was not had until about eight months later.

At the conclusion of the evidence, the court sustained motions for directed verdicts as to the parents, and sustained a demurrer as to the minor daughter, and plaintiff appeals.

As to the minor daughter, the record shows conclusively that the case was dismissed because no guardian ad litem had been appointed as required by 12 O.S.1961 §§ 228 and 229. This action by the trial court was proper. The appointment of a guardian ad litem for an infant defendant is not a mere formality, but has for its basis the protection of the rights of one under disability. While it is true that a judgment rendered against an infant not represented by a guardian ad litem is not void, but only voidable, as held in the only authority cited by plaintiff on this point, that is not the precise question before us at this time, since no judgment was actually entered against the minor defendant. We are also aware that the appointment of a guardian ad litem during the course of trial may serve to validate otherwise objectionable proceedings against an infant daughter, if such is done in time to adequately protect the interests of such defendant. In the instant case, however, the matter of the absence of a guardian ad litem apparently escaped the court's attention until both plaintiff and defendants had completed their cases in chief, although it had been mentioned at pre-trial conference about eight months earlier. It is extremely doubtful that an appointment of a guardian ad litem at that stage of the trial could have

been said to be in time to adequately protect the minor interests.

■ Also, the fact that, as in this case, an infant defendant is actually represented at the trial by his parents, or that adult defendants whose interests are the same as those of the infant are making proper defense by their counsel, does not cure failure to have a guardian ad litem appointed to represent the infant. 27 Am.Jur. Infants, Sec. 120.

In this case, the minor defendant filed no cross petition, and did not otherwise affirmatively invoke the jurisdiction of the court in her behalf, as was done in Stephenson v. Stephenson, 196 Okl. 623, 167 P.2d 63.

■ We hold that the action of the court in dismissing the case without prejudice to refiling (12 O.S.1961 § 100), as to the minor defendant, under the circumstances shown to exist, was not error.

■ The parents were sued in this case on the theory that they had knowingly permitted an unqualified and unlicensed driver, their minor daughter, to operate the automobile which was involved in the accident. See 47 O.S.1951 § 308 (now repealed); see also Berg v. Bryant, Okl., 305 P.2d 517.

On the question of whether the parents *knowingly* permitted their daughter to drive the car, as raised and argued in plaintiff's propositions 2 and 4, the evidence most favorable to plaintiff was his own testimony as follows, concerning a statement made by the girl at the scene of the accident:

"* * * She stated that her mother had given her the keys with permission to drive it around the house. * * *."

On cross examination the plaintiff testified as follows:

"Q. Now, you say you talked to this little girl after the accident, is that right?

"A. Yes, sir.

"Q. And she said her mother had left her the key so she could drive it in yard?

"A. Yes, sir; around the house.

"Q. Around the house?

"A. Yes, sir.

"Q. She didn't say anything about driving it in the roadway?

"A. No, sir. * * *.

"Q. Let me ask you this, if you didn't testify to this in your deposition:

"Did you say where her mother told her to practice driving?

" 'A. In the yard.

" 'Q. In the yard?

" 'A. Yes.

" 'Q. But she at no time indicated to you that either her father or mother had given her permission to drive the car out there on the road?

" 'A. No.' Did you make those statements?

"A. Yes.

"Q. And those were the truth, is that right?

"A. That is right."

Although there was redirect and recross examination of plaintiff, there was no further testimony on this particular subject.

■ In his brief on appeal, plaintiff cites Lambert v. Rainbolt, 207 Okl. 451, 250 P.2d 459; Moore v. Dobyns, 186 Okl. 273, 97 P.2d 79, and other cases in support of the well established rule that a demurrer admits the truth of the evidence, and the inferences to be drawn therefrom, in favor of the party against whom such demurrer is directed; and the evidence favorable to the party urging the demurrer is to be disregarded, *and the trial court is not permitted to weigh conflicting evidence.* He also cites the correct rule that a demurrer to plaintiff's evidence will be treated as a motion for directed verdict.

■ He argues, in effect, that the court in this case should have considered only the testimony that the minor defendant had permission to drive the car "around the house", and should have disregarded plaintiff's testimony, on cross examination, that

he meant "in the yard" and not on public roadways.

▇▇ In this connection, we have held that on consideration of a demurrer to plaintiff's evidence, the court should consider as withdrawn any part of plaintiff's *own* evidence favorable to defendant, which is in conflict with other evidence by plaintiff. See McReynolds v. Oklahoma Turnpike Authority, Okl., 291 P.2d 341, and cases therein cited.

However, note that the rule, which we reaffirm, is applicable only where there is a conflict in plaintiff's evidence. Under the circumstances in this case, we cannot say that there was such a conflict. On cross examination, plaintiff merely amplified and explained what he had said on direct examination. He made no claim that his testimony in the deposition was in error, or was in conflict with his testimony on direct examination, but freely admitted that it was the truth. There is not necessarily a conflict between the phrases "around the house" and "in the yard" and there was in fact none in this case. There was no return to the subject on redirect or recross examination, as there surely would have been if there had been a true conflict in his testimony. We therefore conclude that plaintiff accepted the amplification and explanation of his testimony as brought out on cross examination, and relied upon the sum total of its probative force to hold the parents liable in this case.

▇▇ Plaintiff does not suggest any other theory, either of fact or of law, under which the parents may be held liable. The so-called "family purpose doctrine" is not followed in this state (Jamar v. Brightwell, 162 Okl. 124, 19 P.2d 366; 88 A.L.R. 604). In the vast majority of jurisdictions in which the liability of the owner may be predicated upon his consent to the use of the automobile by a negligent driver, the owner of the car is not liable for the negligence of another in operating the same at a time and place (or for a purpose or on an occasion) outside the terms of the consent given. 159 A.L.R. 1314.

Plaintiff cites Greenland v. Gilliam, 206 Okl. 85, 241 P.2d 384; Coker v. Moose, 180 Okl. 234, 68 P.2d 504; Sawyer v. Kelly, 194 Okl. 516, 153 P.2d 97; Berg v. Bryant, Okl., 305 P.2d 517; and other cases in which the owner was held liable for the negligent operation by the driver under the "consent" theory. In all of these cases, there was direct or circumstantial evidence of the consent of the owner to the use by the negligent driver of the automobile at the time and place where the accident happened; or there was evidence of a course of conduct from which the consent of the owner could be implied.

There is no such evidence in the case before us. No "course of conduct" from which the parents' consent could be implied was shown, and there was no direct or circumstantial evidence that they had given their consent to the use of the automobile upon public roads.

There being no evidence under which the parents could be held liable for the negligence, if any, of their minor daughter, we hold that the trial court did not err in sustaining the motions for directed verdicts as to the parents. Georgia State Savings Ass'n v. Elias, 196 Okl. 256, 64 P.2d 627.

Plaintiff's complaint that the court denied him the opportunity to present rebuttal evidence is not supported by the record. He made no request for permission to present rebuttal evidence, and his motion for new trial did not mention this precise question. Also, since the case was disposed of upon the basis of motions for directed verdict and demurrers, there was no necessity for plaintiff to rebut defendants' evidence.

The judgment of the trial court is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.